IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



-----------------------------------------------------------x

**SABRINA GIBSON**
32 Carmine Place
Hampton, VA 23666

                                                                                  Civil Action No. 1: 22CV517

              **Plaintiff,**

vs.

**THOMAS F. ROUPAS, JR.**
119 North Greene Street, Suite 100
Greensboro, NC 27401

and

**PARR INVESTMENTS, LLC**
3614 Camden Falls Circle
Greensboro, NC 27410

              **Defendants.**

-----------------------------------------------------------x

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, SABRINA GIBSON (hereinafter referred to as "Gibson or "Plaintiff") who, via *Pro Se* submission files this, her Complaint for Damages and Demand for Jury Trial against Defendants THOMAS ROUPAS JR. ("Roupas") and PARR INVESTMENTS, LLC ("Parr") (hereinafter collectively referred to as "Defendants"), and in support thereof, states the following:

## PARTIES TO THE ACTION

1. Plaintiff Sabrina Gibson is *sui juris* before this Court, a resident of Hampton, Virginia, and the injured party as described herein.

2. Defendant Thomas F. Roupas, Jr. ("Roupas") is *sui juris* before this Court, an adult citizen over the age of 18, and upon information and belief, is licensed to practice law in the State of North Carolina. At all times relevant herein, Roupas acted in a capacity as counsel for Gibson, under the terms of a Retainer Agreement, which created a fiduciary duty on his part towards Gibson.

3. Defendant Parr Investments, LLC ("Parr") is a for-profit property management and investment company, which, upon information and belief, is licensed to conduct everyday business in North Carolina.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this court since a significant amount of the events and conduct complained of herein, all occurred in the Middle District of North Carolina and is invoked pursuant to 28 U.S.C. 1319(b) & (c).

6. Personal jurisdiction is established over Roupas as he is a resident of this District, operates business in this District, and whose conduct giving rise to the claims herein occurred in this District.

7.  Personal jurisdiction is established over Parr as it operates business in this District, and whose conduct giving rise to the claims herein occurred in this District.

8.  All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

9.  All actions taken by the Defendants' employees as alleged in this complaint were done within the scope of their official duties and under the color of law.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

10. Gibson resided at 3770 Stafford Place Apartments in Winston Salem, North Carolina until November 1, 2018.

11. At all times material herein, Stafford Place Apartments operated under the care and control of Defendant Parr.

12. Gibson was forced out of her fully executed Lease Agreement by the landlord and other parties, which was signed on or about September 1, 2018.

13. Gibson retained Counsel, Defendant Roupas, to represent her in a sexual harassment complaint she wished to file against a newly hired maintenance man, Mr. Paul Cravely. Mr. Paul Cravely was hired by Stafford Place Apartments.

14. Gibson's complaint alleged that Mr. Cravely was engaging in nefarious activities with women on the property, including Gibson.

15. After Gibson submitted her complaint, she began experiencing various acts of harassment and intimidation from the leasing office at Stafford Place Apartments, in particular from the Leasing Manager.

16. Mr. Cravely also began harassing Gibson. Multiple text messages and phone calls were placed in an attempt to intimidate and harass Gibson.

17. At no time did Gibson wish for Mr. Cravely to lose his job at Stafford Place Apartments.

18. Mr. Cravely stated that he "had friends in law enforcement," who could make things difficult for him. Gibson was not aware at the time that he was actually informing Gibson of what was going to happen to her.

19. Gibson's then-counsel, Roupas, sent written correspondence to Stafford Place to inquire as to the status of her complaint. Roupas further advised the apartment complex that Gibson would vacate the property on or before October 31, 2018.

20. Unbeknownst to Gibson at the time of retaining Roupas, Roupas also worked for and had sufficient business relations with Defendant Parr.

21. Roupas never communicated his relationship with Parr to Gibson.

22. At some time, Roupas stopped communicating with Gibson, and Mr. Elliott Fuss had informed the apartment complex that Gibson had left.

23. Gibson was forced out of her apartment.

24. Stafford Place alleged that Gibson had "drugs," and thus were justified in evicting her.

25. A third attorney was hired to review this matter for Gibson. In 2018-2019, Taisha Wray of Charlotte, North Carolina was given $1,100.00 by Gibson to see what could be done about the apartment situation, the complaint and the harassment.

26. Ms. Wray did nothing in furtherance of representation of Gibson. She claimed that she could never get ahold of Gibson, which was an untruthful assertion.

27. Ms. Wray only spoke to Gibson one time. In fact, in March 2018, Ms. Wray purposely and knowingly hung up the phone on Gibson.

4

28. During Gibson's tenancy, Gibson was surveilled.

29. Gibson left North Carolina in the hopes of escaping the harassment, surveillance, intimidation and bullying perpetrated upon her by Defendants.

30. From 2018-2020, Gibson had to rent four storage units, including one in South Carolina. Defendants kept unlawfully entering the units, so they were eventually closed.

31. In 2020, Gibson obtained a storage unit in Fredrickburg, Virginia, after being forced to move out of Riverside Manor.

32. Roupas has associates under his control in Virginia, North Carolina, South Carolina and Georgia.

33. Roupas and his associates hacked into Gibson's phone, and were purposely monitoring her whereabouts, which hotels she was staying at, who she was calling and who was contacting her.

34. Roupas' associates have followed Gibson to Virginia in an attempt to continue harassing her.

35. On or about June 1, 2019, a disturbing incident took place with Mr. Roupas' associates. The associates followed and taunted Gibson as she was driving on the highway. Gibson's car accelerated in an attempt to get away from these predators, all the way from Georgia to Virginia, along I-20, I-95, Highway 64, Highway 17, and Highway 13 into Tidewater, Virginia.

36. Many 9-1-1 and non-emergency calls were made along the way as Gibson was in fear for her life and safety.

37. At many times, there was a large black truck that would park next to Gibson's Kia Soul in front of the car, squeeze in next to her.

38. There was a heavy tint on the black truck.

39. The person in the black truck was listening in on Gibson's phone calls, particularly with Nikita Reid, of North Carolina.

40. Another 3-5 cars repeatedly followed and surveilled Gibson in Virginia from November 2018 until the present.

41. Upon information and belief, Defendants gained unauthorized access to Gibson's documents, emails, text messages, phone records, pictures and other items located in Google Docs, phone galleries and Pinterest.

42. Any emails and documents pertaining to Stafford Place Apartments were intentionally removed and/or deleted by Defendants.

43. Gibson checked her credit and criminal backgrounds.

44. When Gibson and Mr. Brown applied for a rental in Richmond, Virginia, Gibson became aware that the negative items from arrest records, bankruptcies, driving without insurance charges, evictions and multiple addresses were listed on the reports. In addition, 3 evictions were listed. Additionally, up to 51 addresses were noted, including an address for a dead woman.

45. Massey Investigation conducted an investigation into Gibson's North Carolina records. *See complete Investigation Report attached hereto as "Exhibit 1."*

46. Due to the repeated incidents of harassment and intimidation, Gibson has had to pay early-out fees to three separate apartment complexes, including Abbington Hill in Richmond, VA, Courthouse Townhomes in VA, and Riverside Manor Townhomes in Fredricksburg, VA.

47. Defendants and their associates took up residence at each location for the duration of time Gibson was residing in the complexes.

48. Upon information and belief, while residing at Courthouse Townhomes, Defendants, on numerous occasions, accessed the ADT alarm system while they were sitting in the parking lot. Defendants downloaded "spyware," and manually manipulated the system to Gibson's detriment.

49. On or about June 2, 2020, Gibson filed a lawsuit in the District Court of Guilford County, North Carolina against Mr. Roupas, alleging, among other things, that Mr. Roupas had failed to fulfill his fiduciary duty to Gibson in his representation of her against Stafford Place. It was clear to Gibson that the lease agreement was breached by Parr Investments, the property management company. Gibson told Mr. Roupas that she did not want to leave the apartment, but Mr. Roupas did not respond to Gibson's direction in this regard. In fact, Mr. Roupas and his associates attempted to convince Gibson to change her side of the story and say that she left the apartment and was not evicted, which was far from the truth, as Mr. Roupas knew full well.

50. Ultimately, on November 9, 2020, the Guilford County case was dismissed on the ground that Gibson failed to appear for the hearing on Mr. Roupas' motion to dismiss. Gibson was deceived into thinking that the hearing date had been changed, thus the reason she did not appear for hearing.

51. The harassment only heightened after the dismissal of the Guilford County case.

52. Due to the harassment, Gibson was forced to stay at various hotels in an attempt to be free from her harassers, who continuously found ways to harass Gibson.

53. Gibson has received numerous calls at odd hours, such as at 3:00 a.m., wherein Defendants and/or their associates would threaten to either post, upload, or reveal Gibson's text messages, photos, emails, phone records and even private family matters if Gibson reported the stalking and surveilling behavior.

54. As a direct and proximate result of Defendants' actions as described herein, Plaintiffs have been damaged.

## CAUSES OF ACTION

## COUNT I – LIBEL *PER SE*

55. Plaintiff re-alleges the allegations contained in the preceding paragraphs above, as if fully set forth herein.

56. Defendants had published false statements about Gibson.

57. Defendants had published false eviction records, which now appear on Gibson's background checks.

58. Defendants had published false bankruptcy records, which now appear on Gibson's background checks.

59. Defendants had published false criminal records, which now appear on Gibson's background checks.

60. A publication is libelous per se only if it deals with a narrow range of statements. More specifically, a statement is libelous per se if, when considered alone and without innuendo, it (1) charges a person with committing an infamous crime; (2) charges a person with having an infectious disease; (3) **subjects the person to ridicule, disgrace;** or (4) impeaches one in his trade or profession. *Renwick*, 310 N.C. at 317, 312 S.E.2d at 408-09

(citing *Flake*, 212 N.C. at 787, 195 S.E. at 61); see also *Arnold*, 296 N.C. at 537, 251 S.E.2d at 455; *Ellis*, 326 N.C. at 224, 388 S.E.2d at 130. (emphasis added).

61. In applying for credit, the wrongful publications appear on her background check.

62. In applying for jobs, the wrongful publications appear on her background check and have subjected her to ridicule and disgrace.

63. In applying for rental housing, the wrongful publications appear on her background check and have subjected her to ridicule and disgrace.

64. As a result of Defendants' wrongful conduct, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully prays for this Court to enter judgment against Defendants as follows:

1. For a declaration that Defendants' actions as alleged herein are unlawful;
2. For actual damages of no less than $75,000.00;
3. For interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;
4. For reasonable costs of suit; and
5. For such other and further relief as this Court deems just and proper.

## COUNT II – LIBEL (Susceptible of Two Interpretations)

65. Plaintiff re-alleges the allegations contained in the preceding paragraphs above as though fully set forth herein.

66. Defendants had published false statements about Gibson.

67. Defendants had published false eviction records, which now appear on Gibson's background checks.

9

68. Defendants had published false bankruptcy records, which now appear on Gibson's background checks.

69. Defendants had published false criminal records, which now appear on Gibson's background checks.

70. In applying for credit, the wrongful publications appear on her background check.

71. In applying for jobs, the wrongful publications appear on her background check and have subjected her to ridicule and disgrace.

72. In applying for rental housing, the wrongful publications appear on her background check and have subjected her to ridicule and disgrace.

73. North Carolina's libel law is a somewhat unique variation on the generic common law. Unlike many jurisdictions, not all libels are actionable per se in North Carolina. Instead, North Carolina divides libels into three categories: (1) libels *per se*, which are publications obviously and on their face injurious and defamatory; (2) publications which are susceptible to two reasonable interpretations, one which is obviously defamatory and the other which is not; and (3) libels *per quod*, which are publications that are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium, and explanatory circumstances. *Flake v. Greensboro News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1937); see also *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979); *Renwick v. News & Observer Publishing Co.*, 310 N.C. 312, 316, 312 S.E.2d 405, 408 (1984); *Ellis v. Northern Star Co.*, 326 N.C. 219, 223-24, 388 S.E.2d 127, 129-30 (1990).

Case 1:22-cv-00517-WO-JLW Document 1 Filed 07/05/22 Page 10 of 14

74. Defendants' false publications about Gibson are defamatory when considered with explanatory and the totality of the circumstances, including Defendants' pattern and practice of ongoing harassment and intimidation of Gibson.

75. As a result of Defendants' wrongful conduct, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully prays for this Court to enter judgment against Defendants as follows:

>   1. For a declaration that Defendants' actions as alleged herein are unlawful;
>
>   2. For actual damages of no less than $75,000.00;
>
>   3. For interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;
>
>   4. For reasonable costs of suit; and
>
>   5. For such other and further relief as this Court deems just and proper.

## COUNT III- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. Plaintiff re-alleges the allegations contained in the preceding paragraphs above as though fully set forth herein.

77. The essential elements of a claim of intentional infliction of emotional distress are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country*

11

*Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts, § 46 cmt. (d) (1965)). Whether conduct meets this standard is a question of law. *Lenins v. K-Mart Corp.*, 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990).

78. Defendants' conduct is extreme and outrageous.

79. Defendants' conduct goes beyond all possible bounds of decency. Defendants have engaged in an organized effort to harass, stalk, and intimidate Gibson, only for their benefit, and to Gibson's detriment.

80. Gibson has been forced to move several times in the past few years as a result of Defendants' conduct.

81. Gibson has been forced to seek protection from Defendants several times in the past few years as a result of Defendants' conduct.

82. Defendants have engaged other co-conspirators to stalk and intimidate Gibson.

83. As a result of Defendants' wrongful conduct as described herein, Gibson has suffered severe emotional distress.

**WHEREFORE**, Plaintiff respectfully prays for this Court to enter judgment against Defendants as follows:

1. For a declaration that Defendants' actions as alleged herein are unlawful;

2. For actual damages of no less than $75,000.00;

3. For interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

4. For reasonable costs of suit; and

5. For such other and further relief as this Court deems just and proper.

## COUNT IV- CIVIL HARASSMENT / INTIMIDATION

84. Plaintiff re-alleges the allegations contained in the preceding paragraphs above as though fully set forth herein.

85. As described herein, Defendants have engaged in a coordinated and concentrated campaign of harassment and intimidation directed at Gibson.

86. Defendants have stalked Gibson.

87. Defendants have purposefully intimidated Gibson for retaliatory purposes.

88. Defendants have harassed Gibson in multiple locations and at multiple times as more fully described herein.

89. As a result of Defendants' wrongful conduct, Gibson has been damaged.

**WHEREFORE**, Plaintiff respectfully prays for this Court to enter judgment against Defendants as follows:

1. For a declaration that Defendants' actions as alleged herein are unlawful;

2. For actual damages of no less than $75,000.00;

3. For interest on compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

4. For reasonable costs of suit; and

5. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 20, 2022.

Respectfully submitted,

*[signature]*

Sabrina Gibson

32 Carmine Place
Hampton, VA 23666
Email: pablob981@yahoo.com
Phone: 1.757.327.8499

*Pro Se Plaintiff*